**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| **ATRIUS DEVELOPMENT GROUP CORPORATION, INC.,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | **Civil Action No. 7:26-cv-211** |
| **ABC IP, LLC,** | § § | **JURY TRIAL DEMANDED** |
| **RARE BREED TRIGGERS, INC.,** | § | |
| **RARE BREED FIREARMS LLC,** | § | |
| **LAWRENCE DEMONICO,** | § | |
| **KEVIN MAXWELL, COLE LELEUX,** | § | |
| **and MICHAEL REGISTER** | § § | |
| **Defendants.** | | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Atrius Development Group Corporation, Inc. ("Atrius"), by and through the undersigned counsel, for its Complaint against ABC IP, LLC ("ABC"), Rare Breed Triggers, Inc., Rare Breed Firearms LLC (collectively, "RBT"), Lawrence DeMonico, Kevin Maxwell, Cole LeLeux, and Michael Register (altogether, "Defendants"), hereby allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This action arises from Defendants' ongoing efforts to unlawfully disrupt Atrius' relationships with its valued customers by aggressively and repeatedly asserting unfounded claims of patent infringement through lawsuits against Atrius's resellers (but not Atrius) targeting an Atrius product known as the "Atrius Forced Reset Selector" ("FRS"). Defendants are currently engaged in a campaign of intimidation directed at manufacturers, distributors, and resellers of firearm components known as forced reset triggers ("FRTs") and forced reset safety mechanisms for AR-15 pattern firearms.

2. This action seeks: (i) declaratory judgment of non-infringement of newly-issued United States Patent No. 12,636,403 ("the '403 Patent" or the "Asserted Patent"), pursuant to 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, including Title 35, United States Code; (ii) declaratory judgment that the '403 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112; and (iii) declaratory judgment that the '403 Patent is unenforceable due to inequitable conduct.

3. On September 5, 2023, a district court in the Eastern District of New York granted the Department of Justice's motion for a preliminary injunction, enjoining Defendants and their principals from making and selling FRT triggers, which the court found were likely illegal "machineguns" under 26 U.S.C. § 5845(b). *United States of America v. Rare Breed Triggers, LLC*, 1:23-cv-369 (E.D.N.Y.), ECF No. 139.

4. Before this injunction, on information and belief, Defendants amassed significant revenues (nearing $40 million) during a two-year stretch while the litigation was underway. But during that time, Defendants were the only participants in the marketplace; all lawful FRT manufacturers and sellers complied with the then-enforced, lawful classification of FRTs as "machineguns." Defendants profited from this defiance, often flaunting their "fight" while other manufacturers rightly complied with the then-enacted law.

5. On July 24, 2024, however, in a different lawsuit brought by a non-profit gun rights organization challenging the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") classification of FRTs as "machineguns," a district court in the Northern District of Texas (Fort Worth Division) entered a final judgment declaring that the classification was unlawful. *National Association for Gun Rights, Inc. v. Garland*, 4:23-cv-830 (N.D. Tex.), ECF No. 101.

6.      On February 7, 2025, President Trump signed Executive Order 14206, which ordered the Attorney General ("AG") to, within 30 days, examine all actions of executive departments and agencies and the ATF's rules promulgated in the prior four years to determine whether any actions or rules are impinging upon the Second Amendment rights of citizens. The Executive Order also instructed the AG and the Domestic Policy Advisor to formulate a plan of action.

7.      On May 13, 2025, while the judgment of the Northern District of Texas was on appeal, the Department of Justice settled the case along with the case against RBT, thereby rendering FRTs legal under federal (and Texas) law. However, FRTs remain illegal under state law in approximately 15 states.

8.      Defendants responded by immediately filing a wave of predatory patent infringement lawsuits targeting retail outlets that carry FRT-type products, including stores that carry Atrius's FRS product. To date, Defendants have never filed suit against the manufacturers of these products.

9.      Since May 16, 2025, Defendants have filed at least twenty-one patent infringement lawsuits alleging infringement of FRT-related patents.

10.     Since January 7, 2026, Defendants ABC and RBT have filed at least nine lawsuits against resellers of the Atrius FRS alleging infringement of certain patents[1] (collectively, "Customer Lawsuits"), including the following cases spread across the United States:

*ABC IP, et al. v. Hawkphin Sales, LLC.*, et al., 4:26-cv-00015 (S.D. Iowa).
*ABC IP, et al. v. Webcorp., Inc., et al.*, 4:26-cv-00018 (E.D. Mo.).

---

[1] As explained in detail below, on information and belief, RBT has stated its intention to amend its present lawsuits against customers and resellers of the Atrius FRS (plus other FRT-related products) to include allegations of infringement of the '403 Patent.

*ABC IP, et al. v. PistolCap Limited Company, d/b/a Frisco Guns et al.*, 2:26-cv-00053 (E.D. Tex.)

*ABC IP, et al. v. ProSource Firearms, LLC*, 2:26-cv-00055 (E.D. Tex.)

*ABC IP, et al. v. Mister Guns, LLC et al.*, 2:26-cv-00056 (E.D. Tex.)

*ABC IP, et al. v. Superior Firearms of Texas, LLC*, 2:26-cv-00058 (E.D. Tex.)

*ABC IP, et al. v. Optics Planet, Inc. d/b/a OpticsPlanet*, 1:26-cv-01072 (N.D. Ill.)

*ABC IP, et al. v. HK Parts Inc.*, 2:26-cv-90 (D. Utah)

*ABC IP, et al. v. Orion Arms Corp. d/b/a Orion Wholesale*, 4:26-cv-00032 (S.D. Ind.)

11.    Defendants themselves have acknowledged that the Atrius-related reseller actions involve overlapping factual, technical, infringement, validity, claim-construction, customer-suit, and discovery issues concerning the Atrius FRS product and the patents asserted by Defendants. In submissions to the Judicial Panel on Multidistrict Litigation, Defendants grouped the Atrius-related reseller cases together as involving the same accused Atrius FRS product. They represented that coordinated treatment was necessary to avoid inconsistent rulings regarding infringement, validity, claim construction, customer-suit issues, and overlapping discovery. *See* MDL No. 3176, Dkt. 41-1 at 3, 8–10.

12.    Defendants have never alleged or communicated that the Atrius FRS infringes the '403 Patent before declaring their intent to assert it. Instead of bringing suit directly against Atrius—the actual designer and manufacturer of the FRS product accused of infringing the patents asserted by Defendants[2]—Defendants filed a series of unfounded lawsuits against customers and resellers. While Defendants have not named Atrius as a defendant in any of the Customer Lawsuits, the complaints identify the Atrius FRS (among other FRT-related products in some cases).

---

[2] Defendants themselves have referred to Atrius as the "Manufacturer" of the accused "Atrius Forced Reset Selector" in submissions to the JPML. *See* MDL No. 3176, Dkt. 41-1 at 11.

13.     Atrius has previously filed a declaratory judgment action in the Western District of Texas, Midland Division, regarding three earlier-issued patents in the same FRT family (U.S. Patent Nos. 12,031,784, 12,038,247, and 12,578,159) — the "Prior DJ Patents." That action was conditionally transferred to *In re Rare Breed Triggers Patent Litigation*, MDL No. 4:26-md-03176-ALM (E.D. Tex.), where Atrius has filed a Motion to Remand (MDL No. 3176, Dkt. 74). Atrius brings this separate action because the '403 Patent issued on May 26, 2026 — after Atrius filed its First Amended Complaint regarding the Prior DJ Patents.

14.     Each existing (and potential future) Customer Lawsuit has caused, and will continue to cause, harm to Atrius, including through financial loss, litigation burden, business disruption, reputational damage, and strain on customer relationships.

15.     It is not in the substantial interest of justice or an efficient use of judicial resources for Atrius to be forced to defend itself and its customers from Defendants' unjustified patent infringement claims serially and/or in multiple lawsuits in various district courts across the United States. The core technical, operational, prior-art, inequitable-conduct, and infringement issues relating to the FRS are common across the Customer Lawsuits and centrally concern the design and operation of the FRS itself, making Atrius the proper party to litigate those issues.

16.     Atrius seeks relief to resolve the controversy between the real parties in interest, Atrius and Defendants, to protect Atrius's existing and prospective customer relationships, to protect Atrius's lawful, independent innovation, and to remove the uncertainty and false accusations of patent infringement targeting the FRS in district courts across the country. Atrius asks this Court to eliminate the harm and risk Atrius has faced, and continues to face, from Defendants' ongoing campaign of intimidation and bad-faith litigation by declaring that: (i) the FRS product has not and does not infringe any claim of the '403 Patent; (ii) the reselling and use

of the FRS have not and do not infringe any valid claim of the '403 Patent; (iii) all claims of the '403 Patent are invalid; and (iv) the '403 Patent is unenforceable due to inequitable conduct.

17.    Atrius reserves the right to amend this Complaint to add additional claims, including without limitation claims under § 2 of the Sherman Act (15 U.S.C. § 2) for monopolization or attempted monopolization based on the enforcement of one or more fraudulently procured patents (*Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172 (1965)); claims under § 2 of the Sherman Act for sham litigation (*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)); claims under the Texas Free Enterprise and Antitrust Act; common-law claims for tortious interference with existing and prospective business relationships; and claims under federal and state unfair-competition law. Atrius further reserves the right to seek treble damages, attorneys' fees, and costs in connection with any such claims.

## PARTIES

18.    Plaintiff Atrius is a corporation organized and existing under the laws of the State of Texas, with an address at 200 Congress Ave., Unit 31W, Austin, TX 78701.

19.    Atrius's FRS product (pictured below) is a drop-in replacement safety selector compatible with standard AR-15 fire control groups, requiring no modifications. The FRS enables a user to have three positions: SAFE, SEMI-AUTOMATIC (traditional), and FULL-SEMI.

- 6 -



20.     On information and belief, Defendant ABC is a limited liability company organized and existing under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

21.     On information and belief, Defendant ABC does not make, use, sell, or offer for sale any products in the United States.

22.     On information and belief, Defendant Rare Breed Triggers is a corporation organized and existing under the laws of the State of Texas, with addresses at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306, and 15511 Highway 71 West, Ste. 110444, Austin, TX 78738. Based on records available from the Texas Secretary of State, Defendant Rare Breed Triggers' registered agent for service of process is Samuel Eastman with an address of 2110 S. Lamar Blvd., Suite G, Austin, TX 78704.

23.     On information and belief, Defendant Rare Breed Firearms is a limited liability company organized and existing under the laws of the State of Texas with an address at PO Box 341194, Austin, TX 78734. Based on records available from the Texas Secretary of State, Defendant Rare Breed Firearms' registered agent for service of process is Eastman Meyler PC with an address of 2301 E Riverside Dr., Suite A-50, Austin, TX 78741.

24.     On information and belief, Defendant RBT makes, uses, sells, and offers for sale products in the United States, including a trigger mechanism called the FRT-15L3 (pictured below).



FRT-15L3™

Forced Reset Trigger for the AR-15

25.     On information and belief, Defendants do not contend that any claim of the '403 Patent covers the FRT-15L3.

26.     On information and belief, Defendant Lawrence DeMonico is an individual residing at 6124 Osceola Trail, Austin, TX 78738. On information and belief, Mr. DeMonico is the President of RBT and a Manager of ABC. On information and belief, Mr. DeMonico owns LAD, LLC, which is a Member and affiliate of ABC.

27.     On information and belief, Defendant Kevin Maxwell is an individual residing at 1095 Torren Pt., Geneva, FL 32732. On information and belief, Mr. Maxwell is the general counsel

of RBT and a Manager of ABC. On information and belief, Mr. Maxwell owns An 1861 LLC, which is a Member and affiliate of ABC.

28.    On information and belief, Defendant Cole LeLeux is an individual residing at 2118 White Jasmine Ct., Apopka, FL 32712. On information and belief, Mr. LeLeux is a Manager of ABC. On information and belief, Mr. LeLeux previously held an ownership interest in RBT. On information and belief, Mr. LeLeux owns LeLeux LLC, which is a Member and affiliate of ABC.

29.    On information and belief, Defendant Michael Register is an individual residing at 110 Oakwood Dr., Maitland, FL 32751. On information and belief, Mr. Register owns or owned Spider Hole, LLC, which is or was a Member and affiliate of ABC.

### Organizational Structure and Alter Ego

30.    As part of the DOJ's case against RBT, *United States of America v. Rare Breed Triggers, LLC*, 1:23-cv-369 (E.D.N.Y.), ATF agents examined the corporate and financial records of RBT and its closely associated companies: ABC IP, LLC; XYZ Distribution LLC (f/k/a "XYZ Distrubution [*sic*]" or "RB Trig LLC"); and DEF Consulting LLC. The agents also had information from a confidential source with knowledge of RBT's inner workings, who provided the ATF with sales records. The allegations in this subsection are largely based upon those reports. 1:23-cv-369, ECF Nos. 7, 24, 26 (including exhibits).

31.    On information and belief, Defendant RBT was incorporated as a Florida LLC in April 2020. On information and belief, four individuals held ownership interests in RBT at the time of its formation or incorporation: Defendants DeMonico, Maxwell, LeLeux, and Register.

32.    On information and belief, later that year, Defendants DeMonico, LeLeux, and Register divested their ownership interest in RBT, thus leaving Defendant Maxwell as the company's sole owner. Over the intervening years, Defendants reorganized the company from a

single corporate structure to a complex web of interlocking companies, including the original Florida LLC, at least one North Dakota LLC, at least one Texas LLC, at least one Texas corporation, and at least one Delaware LLC.

33. On information and belief, the proceeds from RBT's sales of its FRT products are distributed to a holding company, XYZ Distrubution[3] [*sic*]. On information and belief, after paying its suppliers and manufacturers, RBT's proceeds flow through XYZ to either ABC or DEF Consulting, another entity owned solely by the individual Defendants, or both.

34. On information and belief, as recent as September 18, 2024, ABC was owned by the following Members with the following Percentage Interest:

- LAD, LLC [27.5%]
- An 1861, LLC [17.5%]
- LeLeux, LLC [17.5%]
- Spider Hole, LLC [27.5%]

35. On information and belief, ABC has three Managers: Defendants DeMonico, Maxwell, and LeLeux. On information and belief, Defendant Register was, or has been, at one time, a Manager of ABC, but has recently been embroiled in his own litigation against ABC and DeMonico. *ABC IP, LLC et al. v. Spider Hole, LLC et al.*, No. 1:25-cv-00864-ADA (W.D. Tex.).

36. Records from the Florida Division of Corporations reveal that DEF Consulting was dissolved in 2024, but that its managers included the same LLCs that owned ABC and were owned by the individual Defendants: LAD, An 1861, LeLeux, and Spider Hole.

37. On information and belief, Defendants ABC and RBT—in addition to their former iterations, DEF Consulting, and, presumably, XYZ Distrubution—all share owners, officers, business addresses, and counsel.

---

[3] According to one ATF agent, "'XYZ Distrubution' was purposely misspelled in order to mislead possible investigations" into Defendants' financial arrangements. 1:23-cv-369, ECF No. 7 at 4.

38. On information and belief, payments made between these companies for "consulting services," are not. Rather, they are created to obscure the fact that DeMonico, Maxwell, LeLeux, and Register own and control RBT.

39. On information and belief, the money received by RBT for sales was immediately sent to various bank accounts ostensibly held in the names of other companies. Those funds were sent on to various other bank accounts. Ultimately, the profits from the sales were divided among DeMonico, Maxwell, LeLeux, and Register.

40. On information and belief, as of early 2023, RBT sales generated between $30,000,000 and $40,000,000 in revenue. All or most of the profits from sales were distributed to DeMonico, Maxwell, LeLeux, and Register.

41. On information and belief, ABC, which does not make, use, sell, or offer for sale any products, and exists solely to enforce patents, is inadequately capitalized to satisfy potential judgments. ABC was formed and is maintained as a judgment-proof vehicle to prosecute Defendants' abusive litigation campaign while shielding the individual Defendants and RBT from counterclaims and liability.

42. A civil complaint filed by Defendants ABC and DeMonico against Register and Spider Hole confirms that ABC lacks adequate operating capital. *See ABC IP, et al., v. Spider Hole, LLC, et al.*, No. 1:25-cv-864-ADA (W.D. Tex.), ECF No. 1:

- "Defendant Register made promises to be the 'Money Guy' and finance the operations of ABC. … Spider Hole, an entity owned solely by Register, would be the only party to provide capital to ABC." (¶ 13)

- "Mr. Register knew well before signing the Operating Agreement … that he would not be able to provide capital to ABC." (¶ 14)

- "Spider Hole was solely responsible for providing the capital contributions necessary to fund the Company's endeavors." (¶ 18)

- "On March 20, 2025, the managers of ABC met and voted on making a capital call to Spider Hole in the amount of $4,000,000 to be paid on or before March 31, 2025." (¶ 19)

- "Spider Hole failed to meet the required capital contribution timely." (¶ 20)

- "Because of Spider Hole's failure to contribute capital to ABC, ABC was unable to fund the enforcement of its patents …" (¶ 22)

- "Spider Hole […] failed to remit payment to ABC from the improper sales resulting in damages to the Company and its members of more than $280,000 …" (¶ 33)

43. On information and belief, RBT is similarly inadequately capitalized to satisfy potential judgments, as its revenues have been siphoned through a complex web of affiliate companies to pay the individual Defendants' personal LLCs.

44. Furthermore, Defendants' convoluted, multi-layered corporate structure was designed to insulate the individual Defendants from personal liability for their inequitable conduct related to, and separate from, their abusive patent enforcement campaigns.

**<u>Agency Relationships and Vicarious Liability</u>**

45. On information and belief, ABC, RBT, and the individual Defendants (acting through their personal LLCs — LAD, LLC; An 1861, LLC; LeLeux, LLC; and Spider Hole, LLC) operate as alter egos of one another and constitute a single, integrated enterprise. The corporate separateness asserted among these entities is fictional and has been used to perpetrate the wrongs alleged herein, including the acquisition, prosecution, enforcement, monetization, and threatened enforcement of the '403 Patent against the Atrius FRS and its resellers, customers, distributors, and users.

46. On information and belief, ABC and RBT share common ownership (through the individual Defendants' personal LLCs), common management (DeMonico, Maxwell, LeLeux, and, at relevant times, Register), common counsel, common business addresses, common

operating-capital structures, and coordinated control of the patent-enforcement campaign against the Atrius FRS, including the acquisition, prosecution, assertion, and threatened assertion of the '403 Patent. As alleged in paragraphs 30 through 44, the proceeds from RBT's sales of FRT products are channeled through a multi-entity structure that includes XYZ Distribution LLC and DEF Consulting LLC and ultimately benefits the same individual Defendants who control ABC.

47.     On information and belief, ABC and RBT each direct, control, ratify, authorize, and profit from the other's conduct relating to the '403 Patent, including its acquisition, prosecution, licensing, assertion, enforcement, and threatened enforcement. Each conditions the benefits derived by the other on the performance of activities relating to Defendants' patent-enforcement campaign, and each specifies, in whole or in part, the timing and manner of those activities.

48.     On information and belief, the individual Defendants — Lawrence DeMonico, Kevin Maxwell, Cole LeLeux, and Michael Register — exercise actual, day-to-day control over both ABC and RBT through their respective personal LLCs (LAD, LLC; An 1861, LLC; LeLeux, LLC; and Spider Hole, LLC), which are themselves alter egos of the individual Defendants. The individual Defendants personally direct, authorize, ratify, condition, benefit from, and profit from the conduct of ABC and RBT relating to the '403 Patent, including the filing of the Customer Lawsuits and the threatened assertion of the '403 Patent against the Atrius FRS, its resellers, and its customers.

49.     Under principles of alter ego, single business enterprise, agency, joint enterprise, conspiracy, concerted action, ratification, and vicarious liability — pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d) — each of ABC, RBT, the individual Defendants, and their personal LLCs is liable for the acts and omissions of each of the others relating to the '403 Patent

and the conduct alleged in this Complaint, including for purposes of declaratory relief, injunctive relief, fees, costs, sanctions, and any monetary or equitable remedies awarded by the Court.

## JURISDICTION AND VENUE

50.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the patent laws of the United States, including Title 35, United States Code.

51.     The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and/or 2201, and 2202.

52.     Personal jurisdiction over Defendant Rare Breed Triggers, Inc. is proper in Texas because, on information and belief, Rare Breed Triggers, Inc. is organized under Texas law and maintains Texas business addresses, including addresses in Wichita Falls and Austin, Texas.

53.     Personal jurisdiction over Defendant Rare Breed Firearms LLC is proper in Texas because, on information and belief, Rare Breed Firearms LLC is organized under Texas law and maintains a Texas business address.

54.     Specific personal jurisdiction over Defendants is proper because they have purposefully directed activities or transactions to the State of Texas and have performed acts purposefully availing themselves of the privilege of conducting activities in Texas, and have engaged in conduct directed at Atrius and its Texas-based business relationships, including by filing and maintaining patent infringement lawsuits in Texas federal courts accusing resellers of the Atrius FRS of infringing the patents Defendants are asserting and threatening to assert against Atrius's resellers, including the '403 Patent. For example, Defendant RBT conducts business on an ongoing basis in Texas and elsewhere in the United States, and Defendants ABC and RBT have together filed at least one patent infringement lawsuit in the Western District of Texas. *See*, *e.g.*, *ABC IP, et al. v. Hanes Tactical LLC et al.*, 3:25-cv-00201-DCG (W.D. Tex.). Defendants ABC and RBT have filed at least nine patent infringement lawsuits in judicial districts in the State of

Texas, including at least one lawsuit in the Western District of Texas, one in the Southern District of Texas, and seven in the Eastern District of Texas. Certain of those cases are identified above. Additionally, ABC IP has filed two suits in the Western District of Texas regarding the sale of FRTs. *See ABC IP, et al. v. Spider Hole, et al.*, 1:25-cv-864-ADA (W.D. Tex.); *ABC IP, et al. v. Spider Hole, et al.*, 1:25-cv-1626-ADA (W.D. Tex.).

55.     Specific personal jurisdiction over Defendants DeMonico, Maxwell, LeLeux, and Register is also proper because, on information and belief, each personally participated in, directed, authorized, controlled, ratified, and/or benefited from the conduct giving rise to Atrius's claims, including Defendants' acquisition, ownership, licensing, assertion, enforcement, and monetization of the '403 Patent; and the filing and maintenance of patent infringement lawsuits in Texas federal courts, including lawsuits in the Eastern District of Texas accusing resellers of the Atrius FRS of infringement. These contacts are not based merely on the individual Defendants' corporate titles or statuses, but on their own purposeful acts and participation in the challenged conduct.

56.     Personal jurisdiction over Defendants is also proper under principles of agency, alter ego, conspiracy, concerted action, and/or purposeful direction because, on information and belief, Defendants acted jointly and in concert through ABC, RBT, Rare Breed Firearms LLC, and affiliated entities to obtain, assert, enforce, license, and monetize the '403 Patent and to direct the challenged conduct toward Atrius and its Texas-based business relationships.

57.     Defendants are subject to this Court's specific personal jurisdiction consistent with constitutional due process and the Texas Long-Arm Statute because, among other things, Defendants purposefully directed the challenged conduct toward Texas, Atrius, and Atrius's Texas-based business relationships through their business operations, patent-enforcement

activities, litigation conduct, and other actions alleged herein, and should reasonably anticipate being haled into court in Texas in connection with such conduct.

58. Defendants Rare Breed Triggers, Inc. and Rare Breed Firearms LLC are also subject to general personal jurisdiction in Texas because, on information and belief, they are organized under Texas law, maintain principal places of business and/or continuous and systematic operations in Texas, and are therefore "at home" in Texas for purposes of general jurisdiction.

59. Venue is proper in the Western District of Texas under at least 28 U.S.C. §§ 1391(b), (c) and/or 28 U.S.C. § 1400(b) because Atrius resides in Texas, Defendant Rare Breed Triggers, Inc. resides in Texas, personal jurisdiction is proper over Defendants in Texas, and a substantial part of the events, omissions, and injuries giving rise to Atrius's claims occurred in Texas, including in the Western District of Texas.

**THE '403 PATENT**

60. The '403 Patent is entitled "Firearm Trigger Mechanism" and was issued by the United States Patent and Trademark Office on May 26, 2026. Ex. A is a true and correct copy of the '403 Patent.

61. Defendant ABC asserts in ongoing litigation that it is the current owner by assignment of all right, title, and interest in and to the '403 Patent. On information and belief, Defendant ABC's business is limited to owning and enforcing patents through repeated lawsuits in this District and elsewhere.

62. Defendant RBT asserts that it is the exclusive licensee of the '403 Patent.

63. The named inventor of the '403 Patent is Mladen Thomas Strbac of Cleveland, Ohio — the same Mladen Thomas Strbac who, before any of the priority dates of the '403 Patent, designed, manufactured, sold, publicly demonstrated, and offered for sale the FRT-15-3MD trigger assembly described in detail in Count Three below.

64. As alleged in Count Three, on January 17, 2022, attorney Glenn Bellamy, on behalf of RBT and ABC, sent Strbac a cease-and-desist letter accusing Strbac's FRT-15-3MD of infringing RBT's existing FRT-related patents. On February 21, 2022, Bellamy filed a patent-infringement complaint against Strbac on behalf of RBT in *Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-280 (N.D. Ohio).

65. Subsequent to that litigation, on information and belief, Strbac entered into an arrangement with RBT and/or ABC IP under which Strbac assigned, transferred, or licensed his rights in the FRT-15-3MD-related technology to ABC IP, became the named inventor on a continuous chain of patent applications filed and prosecuted by Bellamy on ABC IP's behalf, and became the public face of a deliberate strategy to convert Strbac's pre-existing prior-art product into purported intellectual property owned and controlled by Defendants.

66. As a result, the '403 Patent names as inventor the very person whose pre-filing commercial product (the FRT-15-3MD) is invalidating §102(a)(1) prior art to the '403 claims, and is assigned to the entity (ABC IP) whose counsel personally accused that product of infringement in federal court before the '403 priority application was filed.

67. The face of the '403 Patent expressly states: "This patent is subject to a terminal disclaimer." On information and belief, that terminal disclaimer was entered to overcome an obviousness-type double-patenting (OTDP) rejection over one or more of the patents in the '403 Patent's priority chain, including without limitation U.S. Patent Nos. 11,724,003, 12,036,336, and/or 12,274,807, each of which names Strbac as inventor and is assigned to ABC IP.

68. By entering that terminal disclaimer, ABC IP necessarily conceded that the claims of the '403 Patent are not patentably distinct from the claims of one or more parent patents in the same family. ABC IP further bound itself to maintain common ownership of the '403 Patent and

the disclaimed parent(s) for the entire patent term; any future divestiture or licensing arrangement that severs that common ownership will render the '403 Patent unenforceable as a matter of law. *See* 37 C.F.R. § 1.321(c)(3).

69.    The terminal-disclaimer concession of non-distinctness reinforces the conclusion that any prior art that anticipates or renders obvious the claims of any parent patent in the '403 family — including, without limitation, the FRT-15-3MD, the FRT-15E3, and U.S. Patent No. 7,398,723 (the "Blakley '723") patent — also anticipates or renders obvious the claims of the '403 Patent.

70.    The '403 Patent was examined by Primary Examiner J. Woodrow Eldred. On information and belief, no separate Supervisory Patent Examiner conducted an independent substantive review of the application.

71.    The face of the '403 Patent lists CPC classifications "A61L 24/0036 (2013.01); A61L 24/0015 (2013.01); A61L 24/043 (2013.01)" alongside additional A61L classifications in the body of the patent. The A61L classification series is directed to "Methods or apparatus for sterilizing materials or objects other than foodstuffs or contact lenses; Accessories therefor" and biomedical adhesive compositions — fields entirely unrelated to firearm trigger mechanisms. The correct international classification, F41A 19/24, appears separately in the Int. Cl. field. These misclassifications reflect a lack of careful technical attention during prosecution.

72.    Defendants, together with their attorney Glenn Bellamy, fraudulently obtained the '403 Patent through a pattern of deceit during patent prosecution, including intentionally withholding at least three material prior art references with the intent to deceive the United States Patent and Trademark Office ("USPTO"), as detailed below.

- 18 -

73.     Further, on information and belief, Mr. Bellamy continued participating in the prosecution of multiple patent applications relating to FRT technology during the pendency of two prior litigations brought by ABC and RBT – *Rare Breed, et al., v. Big Daddy Unlimited, et al.*, 1:21-cv-149 (N.D. Fla.) and *Rare Breed, et al., v. Big Daddy Unlimited, et al.*, 1:22-cv-61 (N.D. Fla.) – despite prosecution bar provisions contained in the protective orders entered in those actions. Specifically, as is common in patent litigation, the protective orders prohibited individuals with access to designated confidential information from participating in the prosecution of patent applications related to the patent-in-suit. The protective orders provided, in relevant part:

> 2.2 Information which has been designated as HIGHLY CONFIDENTIAL — ATTORNEY EYES ONLY may be disclosed only to:
>
> (a) The ***outside attorneys*** of record and their employees who are engaged in assisting this action; ***provided*** that such ***does not include any persons participating in the prosecution of any present or future patent application*** (including the reexamination or reissue of any present or future patent***) that is a counterpart to or related to the patents-in-suit***…

Ex. D at ¶ 2.2 (PDF pages 6-7, 27) (emphasis added).

74.     During the pendency of those two litigations, Mr. Bellamy prosecuted at least seven patent applications relating to FRT technology—the same subject matter implicated by the patent-in-suit in those actions, U.S. Patent No. 10,514,223. On information and belief, those applications included applications that ultimately matured into the patents Defendants are asserting and threatening to assert against Atrius's resellers, including the '403 Patent. On information and belief, Mr. Bellamy's participation in such prosecution activities was inconsistent with, or otherwise implicated, the prosecution-bar restrictions set forth in the protective orders entered in those litigations.

**RECENT EVENTS AND THE '403 PATENT CONTROVERSY**

75.    On May 15, 2026, one day after Atrius filed its First Amended Complaint asserting declaratory judgment claims as to the '784, '247, and '159 patents[4], counsel for Defendants RBT and ABC emailed counsel for Atrius and counsel for other parties currently or anticipated to be in MDL No. 3176, writing that "Plaintiffs plan to move for preliminary injunction against all MDL defendants" and noting that "a new patent soon to issue . . . covers all defendants." *See* Ex. B (May 15, 2026 Christoff Email). Defendants' counsel further previewed plans for "one or more omnibus PI motions that exceed ordinary page limits," "expedited discovery," and coordinated scheduling among the defendants in the MDL. *Id.*

76.    On May 18, 2026, in a filing submitted to the Judicial Panel on Multidistrict Litigation, Defendants ABC and RBT confirmed their intent to assert the '403 Patent against the Atrius FRS. Specifically, Defendants stated, "The U.S. Patent and Trademark Office has scheduled U.S. Patent No. 12,636,403 to issue on May 26, 2026. Plaintiffs will seek leave to amend their pleadings to add the '403 Patent once it issues. With that amendment, a single patent will soon read across every accused product family in this MDL—the Super Safety, the Atrius Forced Reset Selector, the Partisan Disruptor, and the ARC-Fire." MDL No. 3176, Dkt. 92 at 2 (RBT's Opposition to Orion Arms' and HK Parts' Joint Motion to Vacate Conditional Transfer Order).

---

[4] *See* No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 23. As explained elsewhere in this Complaint, Atrius previously filed its declaratory judgment action on the '247 and '784 Patents before this Court (No. 7:26-cv-00057-DC-DTG). However, that original action was included in a Conditional Transfer Order ("CTO") from the MDL Panel that Atrius is actively opposing. *See* MDL No. 3176, Dkt. 74 (Atrius's Motion to Remand; filed April 28, 2026); Dkt. 97 (RBT's Response; filed May 21, 2026). Atrius's Reply is currently due May 28, 2026. Atrius thus amended its complaint in that action to include the '159 Patent in the Eastern District of Texas because, at the time, the case before this Court was administratively closed due to the CTO. Atrius maintains that its original DJ action should be remanded from the MDL and proceed before this Court.

77.    On May 22, 2026, counsel for Defendants RBT and ABC sent another email to counsel for Atrius and other MDL parties confirming that the '403 Patent was "set to issue on Tuesday" (May 26, 2026), and stating Defendants' definite plans, among other things, to:

a.    "seek leave to amend all the complaints to add the new patent, **asserting it against all accused products in the cases** (not just the Super Safety or similar products that will be at issue in our PI motion)";

b.    file a motion for preliminary injunction "against all Super Safety and similar products" in the MDL;

c.    seek leave to file the PI motion under seal "to protect Rare Breed's confidential business information"; and

d.    seek expedited discovery, including written discovery responses within 20 days and fact and Rule 30(b)(6) depositions within 21 days thereafter.

*See* Ex. C (May 22, 2026 Christoff Email).

78.    In none of Defendants' May 15, 2026 or May 22, 2026 communications, nor in any other communication directed to Atrius or its counsel before the filing of this action, did Defendants: (a) offer to forbear from asserting the '403 Patent against the Atrius FRS or against Atrius's resellers, customers, distributors, importers, or users; (b) propose any pre-litigation negotiation, mediation, or licensing discussion concerning the '403 Patent; (c) invite Atrius to address infringement, validity, or enforceability concerns regarding the '403 Patent before Defendants proceeded with their announced enforcement actions; (d) set or propose any deadline by which Atrius was expected to respond to the threatened assertion; or (e) provide Atrius with any infringement claim charts, accused-product analysis, or substantive technical position concerning the application of the '403 Patent to the FRS. To the contrary, Defendants' announced

course of conduct was — and remains — to seek leave to amend their complaints in all pending actions to add the '403 Patent, to immediately seek preliminary injunctive relief, to obtain expedited discovery, and to litigate under seal — all while continuing to exclude Atrius, the actual manufacturer of the FRS, as a named defendant. Defendants' conduct accordingly does not present the circumstances of a patentee engaged in good-faith pre-suit dialogue with an accused infringer, but rather the circumstances of a patentee taking unilateral, definitive, and immediate steps to enforce a newly-issued patent against the FRS through its existing reseller-suit strategy. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007); *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357–58 (Fed. Cir. 2013); *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) ("conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction").

79.    Defendants' May 18, 2026 MDL filing and May 22, 2026 email — taken together with Defendants' pattern of filing nine Customer Lawsuits in less than five months, accusing the FRS of infringement of the patents Defendants are asserting and threatening to assert against Atrius's resellers— establish an affirmative, definite, and immediate intent to assert the '403 Patent against the Atrius FRS and Atrius's resellers and customers. *See SanDisk*, 480 F.3d at 1378, 1381 (declaratory judgment jurisdiction exists where the "patentee asserts rights … based on certain identified ongoing or planned activity" and there is a controversy of "sufficient immediacy and reality"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

80.    Defendants' announced plans further include immediate, aggressive enforcement steps — including one or more omnibus preliminary injunction motions, expedited discovery, sealed filings, and oversized briefing — calculated to inflict maximum, irreparable commercial harm on Atrius's distribution channels and customer relationships within weeks. The controversy

regarding Atrius's right to make, use, sell, and offer for sale the FRS free from any claim of infringement of the '403 Patent is therefore both immediate and concrete, and is properly the subject of declaratory relief in this Court.

81.    Defendants have announced their intent to assert and have prepared to assert imminently at least in ongoing reseller litigation, that the FRS product embodies the technology claimed in the '403 Patent and infringes one or more claims of the '403 Patent.

82.    Defendants' May 22, 2026 announcement that they will seek preliminary injunctive relief "against all Super Safety and similar products" on an expedited, sealed basis represents the most concrete form of imminent enforcement: not merely a threatened lawsuit, but a motion to enjoin sales of the FRS within weeks of filing. The imminent commercial harm to Atrius, its resellers, and its customers from such enforcement confirms that declaratory relief in this Court is the only adequate remedy for the controversy created by Defendants' announced enforcement campaign.

83.    Defendants' announced PI strategy faces multiple substantial impediments that defeat any likelihood of success on the merits or finding of irreparable harm: (i) Defendants have unclean hands arising from their fraudulent procurement of the '403 Patent and the prosecution irregularities alleged herein; (ii) the named inventor (Strbac) is the same person whose pre-filing commercial product invalidates the asserted claims; because that prior art was concealed from the Examiner during prosecution, the practical strength of the statutory presumption is materially diminished, and the trier of fact may give weight to the PTO's lack of opportunity to consider the FRT-15-3MD and FRT-15E3 in evaluating Atrius's invalidity defenses;[5] (iii) the '403 Patent is

---

[5] *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110–111 (2011) (explaining that courts have consistently "observed that the presumption of validity is 'weakened' or 'dissipated' in the circumstance that the evidence in an infringement action was never considered by the PTO").

subject to a terminal disclaimer that admits non-distinctness from parent claims independently challenged on validity grounds; (iv) Defendants' delay in suing Atrius directly (despite knowing of the FRS for years and having sued nine of its resellers) negates any "irreparable harm" showing; (v) the FRS's SAFE and traditional SEMI-AUTOMATIC modes do not arguably implicate the '403 Patent at all, so any injunction would be vastly overbroad and disproportionate to any cognizable infringement claim; and (vi) the public interest weighs against enjoining a lawful firearm component recently affirmed as legal under federal law by DOJ settlement.

84.    The threatened omnibus PI motion would, if granted, cause irreparable harm to Atrius and its resellers far more than any harm the denial of such a motion would cause to Defendants. Defendants concededly distribute their own FRT-15L3 product and acknowledge that the '403 Patent does not cover the FRT-15L3. Defendants' true objective is not to protect the value of the '403 Patent but to use the threat of injunction to extract supracompetitive licensing fees from Atrius's resellers and to drive a competing forced-reset product (the FRS) out of the market through litigation pressure.

**COUNT ONE:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '403 PATENT**

85.    Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

86.    U.S. Patent No. 12,636,403 (the "'403 Patent"), entitled "Firearm Trigger Mechanism," issued from U.S. Application No. 19/033,141 (the "'141 Application") on May 26, 2026.

87.    As a result of Defendants' anticipated assertion of the '403 Patent against Atrius's resellers and customers based on the FRS, there exists a controversy of sufficient immediacy and

reality regarding infringement of the '403 Patent to warrant the issuance of a declaratory judgment of non-infringement under 28 U.S.C. §§ 2201 and 2202.

88.     The FRS and uses thereof do not infringe and have not infringed, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '403 Patent, and Atrius has not contributed to or induced infringement of any claim of the '403 Patent, at least because the FRS, whether sold as a standalone part or installed and used as intended, does not embody or practice each limitation of any claim of the '403 Patent.

89.     By way of example, and without limitation, the '403 Patent claims require, among other things, structures and operational characteristics—including a "locking member" that "mechanically blocks the trigger member" from moving to the released position. The FRS is a drop-in replacement safety selector compatible with standard AR-15 fire control groups, with no further modifications required. The FRS does not contain a component that "mechanically blocks the trigger member from moving to the released position"—*i.e.*, a separate locking bar or blocking member on its own pivot axis that physically prevents the trigger from being pulled until the bolt carrier reaches the in-battery position. The FRS does not contain a locking member as disclosed and claimed in the '403 Patent.

90.     By way of further example, and without limitation, the '403 Patent claims require that, in the forced reset semi-automatic mode, the disconnector hook is "prevented from catching the hammer hook" or "prevented from holding the hammer hook," or alternatively that "rearward pressure on the trigger member does not need to be reduced to actuate the trigger to fire the firearm." During operation of an AR-15 pattern firearm with the FRS installed and set to "FULL-SEMI" mode, the firearm's disconnector hook catches the hammer hook during rearward movement of the bolt carrier. The firearm's disconnector hook is *not* prevented from catching the

hammer hook. This is a fundamental operational difference: the '403 Patent's claimed mechanism "disables" the disconnector so that the hammer falls directly onto the sear without disconnector intervention, while the FRS operates with the disconnector remaining functional throughout the firing cycle.

91.     By way of further example, and without limitation, the '403 Patent claims require that "rearward movement of the bolt means causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position." The FRS does not include a non-mil-spec hammer or a non-mil-spec trigger member with surfaces designed for this forced-reset contact. The FRS is designed to work with standard mil-spec AR-15 components and does not require installation of a non-mil-spec trigger, hammer, or disconnector. A standard mil-spec hammer does not have a surface configured to contact and force the trigger member to the set position during rearward pivoting.

92.     For at least these reasons, the FRS, whether sold alone or installed and used as intended, does not infringe, and has not infringed, any claim of the '403 Patent.

93.     Atrius is entitled to a declaratory judgment that Atrius and the FRS and uses thereof do not infringe, and have not infringed, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '403 Patent.

**COUNT TWO:**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '403 PATENT**

94.     Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

95.     As a result of Defendants' anticipated assertion of the '403 Patent against Atrius's resellers and customers based on the FRS, there exists a controversy of sufficient immediacy and reality regarding the validity of the claims of the '403 Patent to warrant the issuance of a declaratory judgment of invalidity.

96.     The claims of the '403 Patent fail to meet one or more requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

97.     By way of example and without limitation, the claims of the '403 Patent are invalid because the subject matter of those claims was in public use, on sale, or otherwise available to the public before their effective filing date, including by virtue of the public disclosure, demonstration, sale, and use of the Tommy Triggers FRT-15-3MD and the Rare Breed FRT-15E3, as detailed above. One or more claims of the '403 Patent are also invalid because, on information and belief, the claimed locking member mechanism, hammer-driven forced trigger reset, disconnector-disabling functionality, and multi-position safety selector configurations were disclosed, taught, or rendered obvious by prior art systems known to Defendants before and during prosecution of the application that issued as the '403 Patent.

98.     The '403 Patent is subject to a terminal disclaimer over one or more of U.S. Patent Nos. 11,724,003, 12,036,336, and/or 12,274,807. By entering that terminal disclaimer, ABC IP conceded that the '403 claims are not patentably distinct from the claims of those parents. To the extent any of those parent claims are invalid under §§ 102 or 103 in view of the FRT-15-3MD, FRT-15E3, Blakley '723, or other prior art, the '403 claims are likewise invalid.

99.     One or more claims of the '403 Patent are invalid under 35 U.S.C. § 112(a), (b), and/or (f), including without limitation because (i) the "bolt means" limitation lacks adequate corresponding structure for non-AR-15 platforms covered by the broad claim language; (ii) the "locking member" terminology shifts in meaning between mechanical, pivoting, and slidable embodiments without clear delineation; and (iii) the claims encompass subject matter not enabled or adequately described.

100.    A judicial declaration of invalidity is necessary and appropriate so that Atrius may ascertain its rights regarding the '403 Patent.

**COUNT THREE:**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '403 PATENT**
**DUE TO INEQUITABLE CONDUCT**

101.    Atrius repeats and realleges the foregoing paragraphs as if fully set forth herein.

102.    A patent is unenforceable due to inequitable conduct if: "(1) an individual associated with the filing and prosecution of the patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *In re BP Lubricants USA, Inc.*, 637 F.3d 1307, 1327 n.3 (Fed. Cir. 2011).

103.    A pleading of inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).

104.    Each individual associated with the filing and prosecution of a patent application has a duty of candor to and a duty of good faith in dealing with the USPTO. This includes a duty to disclose to the USPTO all information known to that individual to be material to the patentability of any pending claim. *See* 37 C.F.R. § 1.56(a).

105.    The foregoing obligations apply to all individuals associated with the filing or prosecution of a patent application, including: (1) inventors, (2) attorneys or agents who prepare or prosecute the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with an inventor, an applicant, an assignee, or anyone to whom there is an obligation to assign the application. 37 C.F.R. § 1.56(a);

Manual of Patent Examining Procedure § 2001.01. A person is considered to be substantively involved in the preparation or prosecution of the application if that person's "involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature." *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 974 (Fed. Cir. 2010).

106.   On information and belief, Bellamy authorized and was substantively involved in the filing and prosecution of U.S. Application No. 19/033,141 ("the '141 Application"), which issued as the '403 Patent, and accordingly owed a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56 in connection with that prosecution.

107.   Furthermore, independent of Bellamy's conduct in prosecuting the '403 Patent, Bellamy was subject to a prosecution bar arising from his representation of ABC and RBT in prior litigation. Bellamy's prior representation of ABC and RBT in litigation involving forced-reset trigger technology provided him with direct knowledge of accused products, prior-art systems, and technical functionality materially relevant to prosecution of the '141 Application, including the FRT-15-3MD and FRT-15E3 described below.

108.   As detailed above, Bellamy and DeMonico had actual knowledge, no later than January 17, 2022, of the structure, operation, public use, and on-sale activities of the Tommy Triggers FRT-15-3MD product, and had actual knowledge, no later than January 15, 2022, of the structure, operation, and public disclosure of the Rare Breed FRT-15E3. That knowledge predated the filing and prosecution of the '141 Application that issued as the '403 Patent.

109.   The '403 Patent issued from the '141 Application, which was filed January 21, 2025, and which claims priority through a four-step chain of continuations back to the '572 Strbac

Application filed October 21, 2022, and to Provisional Application No. 63/297,884 filed January 10, 2022.

110.    The named inventor of the '403 Patent — Mladen Thomas Strbac — is the same individual who designed, manufactured, sold, demonstrated, and offered for sale the FRT-15-3MD before the January 10, 2022 priority date. Strbac, as the named inventor, owed an independent duty of candor to the USPTO under 37 C.F.R. § 1.56. Strbac had personal, direct knowledge of his own pre-filing commercial product and its operation. Strbac's failure to disclose the FRT-15-3MD to the USPTO during prosecution of the '141 Application — the application bearing his own name as inventor — is inexplicable on any theory other than an intent to deceive.

111.    Defendant DeMonico, who personally demonstrated the FRT-15E3 on YouTube on January 15, 2022, similarly had personal, direct, and contemporaneous knowledge of the FRT-15E3's structure, operation, and public-disclosure date. DeMonico, as a Manager of ABC IP (the applicant) and President of RBT (the exclusive licensee), was substantively involved in the filing, prosecution, monetization, and enforcement of the '141 Application and the resulting '403 Patent, and owed a duty of candor under 37 C.F.R. § 1.56.

112.    Attorney Glenn Bellamy, who signed and filed the Strbac Complaint accusing the FRT-15-3MD of infringement (Ex. E), and who participated in the prosecution of the '141 Application, knew of the FRT-15-3MD's structure and operation and had a duty of candor under 37 C.F.R. § 1.56. Despite that duty, Bellamy did not disclose to the Examiner during prosecution of the '141 Application: (a) the FRT-15-3MD product itself; (b) the cease-and-desist letter dated January 17, 2022; (c) the Strbac Complaint or its allegations; (d) the FRT-15E3 product; (e) the January 15, 2022 YouTube video; or (f) any related materials describing the structure, operation, or public-disclosure date of either product.

113.    The single most reasonable inference from the facts alleged herein — including (i) Strbac's status as both inventor and prior-art creator, (ii) the inclusion of Strbac as the named inventor on a continuous chain of ABC-IP-owned applications culminating in the '403 Patent, (iii) the timing of the priority chain relative to the FRT-15-3MD's public sales and the FRT-15E3's public demonstration, (iv) Bellamy's personal involvement in both the Strbac Complaint and the prosecution of the '141 Application, (v) the failure to disclose the FRT-15-3MD, the FRT-15E3, the Strbac Complaint, the cease-and-desist letter, or the YouTube video, and (vi) the strategic use of common-ownership representations to remove related applications from §102(b)(2)(C) prior-art consideration — is that Strbac, Bellamy, and DeMonico, individually and in concert, withheld material prior art from the USPTO with the specific intent to deceive, in order to obtain issuance of claims they knew the Examiner would have rejected over the withheld art.

114.    The FRT-15-3MD and the FRT-15E3 are material to the patentability of one or more claims of the '403 Patent because they disclose limitations of the claimed locking member mechanism, forced-reset trigger functionality, disconnector-disabling operation, and multi-position safety selector that, on information and belief, were not otherwise disclosed in the prior art of record before the Examiner during prosecution of the '141 Application. Had the Examiner been aware of the FRT-15-3MD and/or FRT-15E3, the Examiner would not have allowed at least one claim of the '403 Patent in its issued form.

115.    Neither Bellamy nor DeMonico, nor any other individual associated with the prosecution of the '141 Application, disclosed the FRT-15-3MD or the FRT-15E3 to the USPTO during prosecution of the application that issued as the '403 Patent. Nor did they disclose the related litigation materials, public demonstrations, videos, or allegations describing the operation and functionality of those prior-art systems.

116. On information and belief, the facts alleged herein support a reasonable inference—and the single most reasonable inference is—that Bellamy and DeMonico intentionally withheld at least the FRT-15-3MD and FRT-15E3 from the USPTO with the specific intent to deceive the USPTO into issuing the '403 Patent. That inference is supported by: (a) Bellamy's and DeMonico's longstanding knowledge of those products; (b) the materiality of those products to claimed three-position forced-reset functionality; (c) their failure to disclose those products or related materials; and (d) the close relationship between the '141 Application and applications filed by RBT/ABC for other patents that have been asserted against Atrius's resellers (and manufacturers and resellers of other FRT-related products).

**Tommy Triggers FRT-15-3MD Prior Art**

117. Material prior art known to, and withheld by, Bellamy and DeMonico includes a trigger assembly sold by Mr. Mladen Thomas Strbac (d/b/a Tommy Triggers) called the FRT-15-3MD.

118. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the Provisional Application was filed.

119. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the '141 Application was filed.

120. The FRT-15-3MD qualifies as prior art to the '403 Patent under 35 U.S.C. §102(a)(1).

121. Bellamy was aware of the FRT-15-3MD because he signed and filed a patent infringement complaint against Strbac/Tommy Triggers on behalf of ABC and RBT on February 21, 2022. *See Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-280 (N.D. Ohio), ECF No. 1 ("Strbac Complaint," attached hereto as Ex. E). That complaint describes and includes several

photos of the FRT-15-3MD. That complaint includes, as an exhibit, a cease-and-desist letter dated January 17, 2022, signed by Bellamy and sent to Tommy Triggers regarding that trigger assembly.

122.    On information and belief, DeMonico was aware of the FRT-15-3MD because the suit against Tommy Triggers was brought on behalf of ABC and RBT. In addition, the case was ultimately settled, and DeMonico would likely have signed, approved, and/or negotiated the agreement on RBT's behalf. RBT's own infringement complaint independently confirms this knowledge. By no later than the filing of that complaint, RBT had investigated the FRT-15-3MD, understood its accused operation, and considered it sufficiently relevant to the claimed forced-reset technology to accuse it of infringement in federal court. A product that RBT understood well enough to investigate and accuse of infringement was, at a minimum, sufficiently relevant and material to disclose to the USPTO during prosecution of overlapping claims directed to forced-reset firearm technology.

123.    Some of the photos of the FRT-15-3MD from the Strbac Complaint are shown below:



124.    The photos included in the Strbac Complaint show that Bellamy was at least in possession of the FRT-15-3MD.

125.    Strbac filed a provisional patent application (No. 63/297,884) on January 10, 2022, which discloses limited information about the FRT-15-3MD.

126.    The FRT-15-3MD was material to the patentability of at least one or more claims of the '141 Application and should have been disclosed to the USPTO. Despite Bellamy's and DeMonico's knowledge of the FRT-15-3MD and its operation, neither disclosed the product, the allegations regarding its functionality, nor the related Strbac litigation materials to the USPTO during prosecution.

127.    The FRT-15-3MD discloses all the claim limitations identified by the Examiner as missing from the prior art of record.

128.    As evidenced by the Strbac Complaint (¶¶ 44-47), a firearm with the FRT-15-3MD has a safety selector (that would be mounted in the fire control mechanism pocket) that can be

rotated to switch between safe, standard semiautomatic, and forced-reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced-reset trigger discloses key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

129.    As shown in the Strbac Complaint (¶¶ 27, 29, 45), a firearm with the FRT-15-3MD can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode discloses key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

130.    The Strbac Complaint (¶¶ 44-45, 47, 50, 76) also evidences that a firearm with the FRT-15-3MD can operate in forced-reset mode. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15-3MD prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member. This disclosure of a forced-reset semiautomatic mode meets key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

131.    A person of ordinary skill in the relevant art would have been motivated to modify Blakley '723 (*i.e.*, the closest prior art identified by the Examiner during the prosecution of another RBT/ABC patent) trigger mechanism to include a three-position safety selector as taught by the

FRT-15-3MD to allow the firearm to operate in each of three modes (safe, standard semiautomatic, and forced-reset semiautomatic), wherein the disconnector is prevented from catching the hammer hook in forced-reset semiautomatic mode.

132. Had the Examiner been aware of the FRT-15-3MD, he would have rejected at least one or more claims of the '141 Application under 35 U.S.C. §103 in light of Blakley '723 and the FRT-15-3MD.

133. Neither Bellamy nor DeMonico, nor anyone else involved with prosecuting the '141 Application, disclosed the FRT-15-3MD to the USPTO during prosecution of the '141 Application. Nor did they disclose that RBT had already accused the FRT-15-3MD in federal litigation based on allegedly overlapping forced-reset functionality.

134. On information and belief, Bellamy and/or DeMonico intentionally used a later-filed Strbac Application and the common-ownership representation described below to prevent the USPTO from substantively considering the prior-art significance of the earlier FRT-15-3MD product.

135. During prosecution of another patent asserted against Atrius's customers and resellers, ABC disclosed U.S. Patent No. 11,724,003 to Mladen Thomas Strbac ("Strbac '003") in an Information Disclosure Statement ("IDS") filed August 31, 2023. That IDS additionally identified 114 issued patents, 25 published patent applications, 7 foreign patent documents, and 1 non-patent literature document. On information and belief, the extensive IDS, identifying approximately 150 items, served to obscure the disclosure and relevance of Strbac '003.

136. Strbac '003 issued on Application No. 18/048,572 ("the '572 Strbac Application"), which was authorized by Bellamy and filed on October 21, 2022. The '572 Strbac Application discloses aspects of a modified version of the FRT-15-3MD.

137. The new matter added to the '572 Strbac Application is not entitled to priority as of the filing date of Strbac's provisional application No. 63/297,884 (January 10, 2022). Instead, all new matter added to the '572 Strbac Application relative to the provisional application has an effective filing date of the '572 Strbac Application (October 21, 2022).

138. The '141 Application claims priority to the '572 Strbac Application (Ex. A at 1:5–15)—thus representing to the USPTO that the '572 Strbac Application was commonly owned with the '141 Application. Under the Manual of Patent Examining Procedure (e.g., MPEP § 717.02(a)), this affirmative statement had the effect of excluding Strbac '003 as prior art under 35 U.S.C. § 102(b)(2)(C) based on common ownership by Defendant ABC of Strbac '003 and the '141 Application, even though Bellamy and DeMonico knew the FRT-15-3MD product was prior art to the claims of the '141 Application. On information and belief, Bellamy and DeMonico understood that characterizing the later-filed '572 Strbac Application as commonly owned would help prevent the USPTO from substantively evaluating the prior-art significance of the earlier FRT-15-3MD product itself.

139. Bellamy and DeMonico thus deceptively removed Strbac '003 from consideration as prior art during prosecution. Indeed, the Examiner did not discuss Strbac '003, the '572 Strbac Application, or the underlying FRT-15-3MD product during prosecution or use any of them in a rejection, despite their obvious similarities to the claimed subject matter. As a result, the USPTO never substantively evaluated whether Blakley '723, in view of the FRT-15-3MD rendered the asserted claims unpatentable.

140. While direct evidence of Bellamy's and DeMonico's state of mind is solely within their control, the information available to Atrius confirms that the single most reasonable inference is that Bellamy and DeMonico intentionally withheld the FRT-15-3MD from the USPTO to obtain

allowance of the '141 Application and issuance of the '403 Patent. That inference is supported by Bellamy's and DeMonico's undeniable knowledge of the structure, operation, and materiality of the FRT-15-3MD (based at least on the Strbac Complaint) and their inexplicable failure to disclose the FRT-15-3MD during prosecution. That inference is further strengthened by the fact that Bellamy had already signed and filed the Strbac Complaint accusing the FRT-15-3MD of infringing forced-reset technology before the relevant prosecution events occurred. This inference is further supported by the statement in the '403 Patent that the '572 Strbac Application was commonly owned by ABC IP, thereby intending to remove it (and the resulting Strbac '003 patent) from consideration as prior art to the '403 Patent. By filing the Provisional Application on January 10, 2022, filing the cease-and-desist letter against Strbac on January 17, 2022, filing the Strbac Complaint on February 21, 2022, then filing the '572 Strbac Application on October 21, 2022, and ultimately identifying the '572 Strbac Application as commonly owned in the specification of the '141 Application—without disclosing the prior art FRT-15-3MD or the existence of the Strbac litigation accusing that same product—Bellamy and DeMonico successfully and intentionally concealed the FRT-15-3MD from the USPTO with the intent to deceive. RBT cannot plausibly contend that the FRT-15-3MD was unknown, insignificant, or poorly understood, where RBT had already deemed the same product important enough to investigate and accuse in federal litigation.

141.    On information and belief, Bellamy and DeMonico were aware that the FRT-15-3MD discloses one or more limitations that the Examiner believed were missing from Blakley '723 and the other prior art of record.

**Rare Breed FRT-15E3 Prior Art**

142.    The Strbac Complaint (¶38) also states that on January 15, 2022—two days before sending a cease-and-desist letter to Tommy Triggers regarding the FRT-15-3MD—DeMonico

publicly disclosed and demonstrated the operation of a three-position forced-reset trigger in which a safety selector switch can change the mode of operation between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes. That public disclosure occurred before filing of both the Provisional Application and the '141 Application and involved subject matter materially similar to limitations the Examiner later identified as missing from Blakley '723. The Strbac Complaint refers to this three-position trigger as the FRT-15E3 and shows a photo of it:



143.    A video of DeMonico demonstrating a firearm with the FRT-15E3 installed and operational was uploaded to YouTube on January 15, 2022, at https://www.youtube.com/watch?v=ZJ0lWi2kfC0. The video publicly depicts the structure, operation, and selector functionality of the FRT-15E3. It confirms that Bellamy and DeMonico were aware of the device and its operation well before the prosecution of the '141 Application.

144.    The FRT-15E3 was disclosed to the public before the Provisional Application to which the '141 Application claims priority was filed.

145.    The FRT-15E3 was disclosed to the public before the '141 Application was filed.

146.    On information and belief, the FRT-15E3 publicly disclosed by DeMonico on January 15, 2022, was developed, tested, and publicly demonstrated before any alleged contribution by Blakley to the specific three-position selector functionality later claimed in the '403 Patent.

147.    On information and belief, Bellamy and DeMonico therefore knew, before filing the Provisional Application and the '141 Application, that a three-position selector capable of switching between safe, standard semiautomatic, and forced-reset semiautomatic modes had already been publicly disclosed.

148.    The FRT-15E3 qualifies as prior art to the '403 Patent under 35 U.S.C. §102(a)(1) and, on information and belief, is not subject to either exception of 35 U.S.C. §102(b)(1).

149.    The FRT-15E3 was material to the patentability of at least one or more claims of the '141 Application because it disclosed limitations the Examiner expressly identified as absent from Blakley '723, including the three-position selector functionality and forced-reset operational modes. Therefore, the FRT-15E3 should have been disclosed to the USPTO.

150.    As evidenced by the Strbac Complaint (¶ 38) and the YouTube video, a firearm with the FRT-15E3 has a safety selector (that would be mounted in the fire control mechanism pocket) that can switch between safe, standard semiautomatic, and forced reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced reset trigger discloses key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

151.    The Strbac Complaint (¶¶ 27, 29, 38, 45) evidences that a firearm with the FRT-15E3 can operate in a standard semiautomatic with disconnector mode, which is much like

- 40 -

that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode discloses key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

152.    The Strbac Complaint (¶¶ 35-36, 38, 45) also evidences that a firearm with the FRT-15E3 can operate in forced-reset semiautomatic mode, like the FRT-15 model also described in that complaint. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15E3 prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member. This disclosure of this forced-reset semiautomatic mode meets key claim elements of the '403 Patent claims, including as Rare Breed has asserted them for infringement purposes.

153.    A person of ordinary skill in the art would have been motivated to modify the trigger mechanism of Blakley '723 to include a three-position safety selector as taught by the FRT-15E3 to allow the firearm to operate in each of three modes (safe, standard semiautomatic with disconnector, and forced-reset semiautomatic), wherein the disconnector is prevented from catching the hammer hook in forced-reset semiautomatic mode.

154.    Had the Examiner been aware of the FRT-15E3, he would have rejected at least one or more claims of the '141 Application under 35 U.S.C. §103 in light of Blakley '723 and the FRT-15E3.

155.    Neither Bellamy nor DeMonico, nor anyone else involved with the prosecution of the '141 Application, disclosed the FRT-15E3, the January 15, 2022, public demonstration, or the related video and litigation materials to the USPTO during the prosecution of the '141 Application.

156.    The facts alleged herein support a reasonable inference that Bellamy and DeMonico intentionally withheld the FRT-15E3 from the USPTO during prosecution of the '141 Application. That inference is supported by, among other things: (a) Defendants' direct involvement in publicly disclosing and demonstrating the FRT-15E3 before filing the Provisional Application; (b) Bellamy's discussion of the FRT-15E3 in the Strbac Complaint; (c) Bellamy's and DeMonico's knowledge that the FRT-15E3 disclosed limitations the Examiner later identified as missing from Blakley '723; and (d) their failure to disclose the FRT-15E3 or related materials to the USPTO despite that knowledge. The single most reasonable inference from these facts is that Bellamy and DeMonico intended to prevent the Examiner from substantively considering the prior-art significance of the FRT-15E3.

157.    Bellamy was aware of the FRT-15E3 because he discussed and showed it in the Strbac Complaint in early 2022, after the FRT-15E3 was publicly disclosed but before the Provisional Application or the '141 Application was filed.

158.    DeMonico was aware of the FRT-15E3 because he publicly disclosed and used it in a video posted to YouTube before the Provisional Application or the '141 Application was filed.

159.    On information and belief, Bellamy and DeMonico were aware that the FRT-15E3 disclosed one or more limitations the Examiner expressly identified as missing from Blakley '723 and nevertheless knowingly failed to disclose the FRT-15E3 to the USPTO. The facts alleged herein support a reasonable inference that Bellamy and DeMonico withheld the FRT-15E3 with the specific intent to deceive the USPTO.

160.    As a result of Defendants' anticipated assertion of the '403 Patent against Atrius's resellers and customers based on the FRS, there exists a controversy of sufficient immediacy and reality regarding the enforceability of the '403 Patent to warrant the issuance of a declaratory judgment of unenforceability.

161.    In the alternative, because the '141 Application that issued as the '403 Patent claims priority to and shares substantially overlapping specification, priority chain, and prosecution lineage with the application that issued as the '247 Patent (which is the subject of inequitable-conduct allegations in Atrius's First Amended Complaint in MDL No. 4:26-md-03176-ALM), the '403 Patent is unenforceable under the doctrine of infectious unenforceability. *E.g.*, *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990) (holding inequitable conduct in procuring one patent rendered related patents unenforceable); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 247 (1933); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA, 2021 WL 8945738, at *5 (W.D. Tex. July 30, 2021) (defining the "Doctrine of Infectious Unenforceability" as "[i]nequitable conduct in the prosecution of a patent [that] may render unenforceable other related patets").

162.    Atrius is entitled to a declaratory judgment that the '403 Patent is unenforceable due to inequitable conduct.

### JURY DEMAND

163.    Atrius hereby demands a trial by jury on all claims and issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Atrius respectfully requests that the Court enter judgment in favor of Atrius and against Defendants and award the following relief:

(a)    Declaring that Atrius does not infringe and has not infringed, and the manufacture, use, sale, offer for sale, importation, distribution, marketing, and support of the FRS

does not infringe and have not infringed, directly or indirectly, literally or under the doctrine of equivalents, contributorily, or by inducement, any valid and enforceable claim of the '403 Patent in violation of 35 U.S.C. § 271.

(b)    Declaring that all claims of the '403 Patent are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

(c)    Declaring that the '403 Patent is unenforceable due to inequitable conduct and/or infectious unenforceability.

(d)    Ordering Defendants to take any necessary and legally available corrective action before the USPTO, including any disclaimer, terminal disclaimer, corrective filing, or other action permitted under 35 U.S.C. § 253 or other applicable law consistent with the Court's judgment concerning the '403 Patent.

(e)    Granting an injunction permanently restraining Defendants and each of their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all persons in active concert or participation with any of them, from alleging, representing, threatening, or otherwise stating that Atrius or the FRS or the activities of manufacturers, distributors, users, importers, or sellers in relation to the FRS infringe any valid and enforceable claim of the '403 Patent and from instituting, continuing, or initiating any action or proceeding alleging infringement of any claim of the '403 Patent against Atrius or any customers, manufacturers, users, importers, or sellers in relation to the FRS.

(f)    Declaring Atrius to be the prevailing party, finding this case exceptional, and awarding Atrius its reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1920, 28 U.S.C. § 1927, and other applicable law.

- 44 -

(g)     Awarding Atrius pre-judgment and post-judgment interest at the maximum rate permitted by law, including pursuant to 28 U.S.C. § 1961, 35 U.S.C. § 285, the Texas Finance Code, and any other applicable federal or state law, on all monetary amounts awarded, including any award of attorneys' fees, costs, expenses, and sanctions.

(h)     Holding Defendants jointly and severally liable for all damages, costs, fees, and other monetary relief to the extent permitted by applicable law.

(i)     Enjoining Defendants from filing or maintaining any patent-infringement claim alleging infringement of the '403 Patent by the FRS or by any reseller, customer, distributor, or user of the FRS, pending the resolution of this declaratory-judgment action.

(j)     Awarding to Atrius any damages, royalties, or other monetary relief obtained by Defendants from any reseller, customer, distributor, or user of the FRS through threats, settlements, or licenses entered into based on the asserted infringement of the '403 Patent, on a constructive-trust or disgorgement theory, in the event the '403 Patent is held invalid, unenforceable, or non-infringed.

(k)     Declaring that the '403 Patent is unenforceable against Atrius and its resellers, customers, distributors, and users under the doctrines of unclean hands, prosecution laches, equitable estoppel, and prosecution-bar violations to the extent established by the evidence.

(l)     Reserving Atrius's right to amend this Complaint to add claims for antitrust, tortious interference, unfair competition, and other relief.

(m)    Awarding such other and further legal or equitable relief as this Court deems just

and proper, including all relief permitted by law.


Dated: May 26, 2026                        Respectfully submitted,

                                           */s/ Robert Manley*
                                           Robert Manley
                                           Texas Bar No. 787955
                                           Christian Hurt
                                           Texas Bar No. 24059987
                                           Edward K. Chin
                                           Texas State Bar No. 50511688
                                           Alex Chern
                                           Texas Bar No. 24109718
                                           RManley@McKoolSmith.com
                                           CHurt@McKoolSmith.com
                                           EChin@McKoolSmith.com
                                           AChern@McKoolSmith.com


                                           **MCKOOL SMITH, P.C.**
                                           300 Crescent Court, Suite 1500
                                           Dallas, TX 75201
                                           Telephone: (214) 978-4000
                                           Telecopier: (214) 978-4044

                                           Adam V. Floyd (Texas Bar No. 00790699)
                                           AFloyd@FloydIP.com

                                           **FLOYD IP**
                                           3203 Bluffs Lane
                                           Parker, Texas 75002
                                           Tel: (512) 497-7500


                                           **Counsel for Plaintiff Atrius Development
                                           Group Corporation, Inc.**